IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DARREN JOSEPH ARNOLD | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| DR. RONALD PHILLIPS, ET AL. | : | NO. 10-5090 |

## <u>MEMORANDUM</u>

**Padova, J.**                                                                         **July 18, 2012**

Pro se Plaintiff Darren Joseph Arnold, who was, at all relevant times, a prisoner incarcerated at the George W. Hill Correctional Facility ("GWHCF") in Delaware County, Pennsylvania, brings this action pursuant to 42 U.S.C. § 1983 against various prison officials at GWHCF.  Among the claims in his Third Amended Complaint (the "Complaint") is a claim that Defendants Dr. Ronald Phillips and Dr. Carl Pierce of the Medical Department at GWHCF denied him access to adequate medical care in violation of the Eighth Amendment to the United States Constitution.

Before the Court is a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by Defendants Phillips and Pierce.  For the following reasons, we grant the Motion to Dismiss and dismiss the claims against Phillips and Pierce with prejudice.

## I.      FACTUAL BACKGROUND

Plaintiff alleges in the Complaint that he arrived at GWHCF on July 7, 2010.  (Third Am. Compl. ("Compl.") at 9.)  He first alerted the staff of his "health condition[s]," asthma and eczema, as well as his "mental health issues," "attempt suicidal," during the initial medical screening process.  (<u>Id.</u>)  In August 2010, Plaintiff went to the medical department following his arraignment video conference to "seek medical attention."  (<u>Id.</u>)  He spoke with Defendant Nurse Susan Kendra and requested to see Doctors Phillips and Pierce regarding his "emergency

medical request (attempt suicide)," but Nurse Kendra denied that request.  (Id.)  The next month, Plaintiff requested three times, on September 5, 6 and 10, to see Phillips and Pierce with respect to his "Emergency Medical needs of Asthema [sic], Eczema, and attempt suicide thoughts," but never received any response or reply.  (Id. at 10.)  Plaintiff also filed numerous inmate grievance forms on or before September 16, complaining of the GWHCF medical department's failure to deal with his medical needs.  (Id. at 10-11.)  On September 18, 2010, Plaintiff met with Defendants Dr. Lisa Tabbit and Nurse Kendra regarding his "emergency medical attention."  (Id. at 11.)  However, Dr. Tabbit "did not treat [his] medical needs such as asthema [sic], eczema, and suicide thoughts."  (Id. (internal quotation marks omitted).)  At the end of September, Plaintiff "begged and pleaded" to see Phillips and Pierce, but he received no response to these requests.  (Id.)

On October 8 and 9, 2010, Plaintiff sent emergency medical requests to the medical department at GWHCF, addressed to Phillips and Pierce, regarding his asthma, eczema, and "higher thoughts of suicidal."  (Id. at 12.)   In mid-October, Nurse Kendra met with Plaintiff in response to the emergency medical requests addressed to Phillips and Pierce.  Id.  She did not, however, treat any of his health issues and refused his reiterated request to see Phillips and Pierce.  (Id.)  A day after their meeting, Plaintiff filed another two inmate grievance forms in which he "clearly announce[d his] need to see [the] medical department for emergency medical help (suicide)."  (Id.)  However, his requests were denied at that time.  (Id.)  Two days after that, Defendant Linda Maher, director of nursing, responded to Plaintiff's complaints, but, according to Plaintiff, she did not adequately address his medical issues and minimized their importance.  (Id. at 13.)  The next day, Plaintiff filed an inmate grievance form stating "Emergency - I'm going to kill myself, need to see Dr. Phillips and Dr. Pierce, I am unlawfully detained in prison. I

will commit suicide," but this request was refused.  (Id.)  During that same week, Plaintiff filed other inmate grievance forms alleging, among other complaints, his need for emergency medical help, and again received no reply.  (Id. at 14-15.)  In October, Plaintiff met with Dr. Phillips, but Dr. Phillips "didn't seek [Plaintiff's] mental health of suicidal.  The asthma [sic] and eczema was disclose, but there were no safety that Dr. Phillips handle."  (Id. at 15.)  In contrast, Plaintiff has not alleged that he ever met with Dr. Pierce.

Throughout November 2010, Plaintiff wrote various requests for medical attention to which he received no response.  (Id. at 16.)  Frustrated with the medical department's failure to address his medical issues, Plaintiff wrote a letter to the United States District Court for the Eastern District of Pennsylvania, indicating his suicidal thoughts resulting from his wrongful conviction and the failure of the medical department at GWHCF to treat his medical issues.  (Id.)  Because of this letter, at the beginning of December, Plaintiff was escorted to the GWHCF's medical department and was placed on suicide watch for 48 hours.[1]  (Id.)  Not long after, however, in mid-December, Plaintiff was at the "highest point of [his] life to kill [himself]," feeling as if "there [was] nothing to live for."  (Id. at 17.)  He again attempted to seek medical attention for his suicidal thoughts, but his request was again denied.  (Id.)

## II.   LEGAL STANDARD

When considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), we look primarily at the facts alleged in the complaint and its attachments.  Jordan v. Fox, Rothschild, O'Brian & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).  We take the factual

---

[1]Plaintiff sent the letter to which he refers to this Court, and we forwarded it to the Superintendent of GWHCF.  Thereafter, the Superintendent called to inform us that he had received our letter and that Plaintiff had been placed on suicide watch.

allegations of the complaint as true and draw all reasonable inferences in favor of the plaintiff.

Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (citing Pinker v. Roche

Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)).  Legal conclusions, however, receive no

deference, and the court is "not bound the accept as true a legal conclusion couched as a factual

allegation."  Papasan v. Allain, 478 U.S. 265, 286 (1986) (cited with approval in Bell Atl. Corp.

v. Twombly, 550 U.S. 544, 555 (2007)).

A plaintiff's pleading obligation is to set forth "a short and plain statement of the claim,"

Fed. R. Civ. P. 8(a)(2), which gives the defendant "fair notice of what the. . . claim is and the

grounds upon which it rests."  Twombly, 550 U.S. at 555 (quotation omitted).  The "complaint

must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

on its face.'"  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at

570).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more

than a sheer possibility that a defendant has acted unlawfully."  Id. (quoting Twombly, 550 U.S.

at 556).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

Id.  In the end, we will dismiss a complaint if the factual allegations in the complaint are not

sufficient "to raise a right to relief above the speculative level."  Twombly, 550 U.S. at 555

(citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, at 1235-36 (3d ed.

2004)).

## III.   DISCUSSION

Reading the Complaint liberally, it appears that Plaintiff attempts to assert a § 1983 claim

against Phillips and Pierce based on their denial of medical care for Plaintiff's (a) asthma and

eczema, as well as (b) suicidal thoughts.  In order to state a claim pursuant to 42 U.S.C. § 1983, a

4

plaintiff must allege (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States.  Luger v. Edmundson Oil Co., Inc., 457 U.S. 922, 930 (1982).  Section 1983 "does not, by its own terms, create substantive rights" but, rather, it merely "provides remedies for deprivations of rights established in the Constitution or federal laws."  Kaucher v. Cnty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006).

The Eighth Amendment's right to be free from cruel and unusual punishment, which applies to the states via the Fourteenth Amendment, "imposes duties on [prison] officials, who must . . . ensure that inmates receive . . . medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'"  Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526–27 (1984)).  To state a claim under the Eighth Amendment for denial of medical care, a plaintiff must plausibly allege that a defendant showed "[1] deliberate indifference to [2] serious medical needs of [a] prisoner[]."  Estelle v. Gamble, 429 U.S. 97, 106 (1976).  Courts have consistently held that "mere allegations of malpractice" are not sufficient to allege "deliberate indifference."  Id. at 106 n.14.

a.   Eczema and Asthma

Plaintiff first alleges that Phillips and Pierce were deliberately indifferent to his serious medical needs arising from his asthma and eczema.  A serious medical need in the Eighth Amendment context must be a medical need that, if untreated, "can be expected to lead to substantial and unnecessary suffering, injury, or death."  Tskonas v. Cicchi, 308 F. App'x 628, 632 (3d Cir. 2009).  Furthermore, a prison official acts with deliberate indifference to a serious medical need only "when he knows of and disregards an excessive risk to inmate health or

5

safety." Brown v Thomas, 172 F. App'x 446, 450 (3d Cir. 2006).

Plaintiff alleges that he requested three times in the same month to see Phillips and Pierce with respect to his asthma and eczema and that when Plaintiff ultimately saw Phillips, Phillips knew of Plaintiff's asthma and eczema but failed to provide any sort of treatment. These allegations are not sufficient to state a plausible Eighth Amendment claim for denial of medical care. While Plaintiff alleges that Phillips and Pierce "fail[ed] to treat" his asthma and eczema, there are no allegations suggesting that the asthma and eczema, if left untreated, would have led to "substantial and unnecessary suffering, injury, or death." Tskonas, 308 F. App'x at 632. Thus, the Complaint fails to allege a medical need involving asthma or eczema that would qualify as "serious" under constitutional standards, and likewise fails to allege facts that could support a conclusion that the asthma and eczema placed Plaintiff at excessive risk, such that Phillips's and Pierce's failure to meet those conditions could constitute deliberate indifference.

      b.     Suicide

Plaintiff also alleges that Phillips and Pierce were deliberately indifferent to his mental health and, more particularly, to his risk of suicide. The law is clear that a "'particular vulnerability to suicide' represents a 'serious medical need.'" Colburn v. Upper Darby Twp., 946 F.2d 1017, 1023 (3d Cir. 1991) ("Colburn II") (citing Colburn v. Upper Darby Twp., 838 F.2d 663 (3d Cir. 1988) ("Colburn I")). The plaintiff in a suicide risk case under the Eighth Amendment "has the burden of establishing three elements: (1) the detainee had a 'particular vulnerability to suicide,' (2) the custodial officer or officers knew or should have known of that vulnerability, and (3) those officers 'acted with [deliberate] indifference' to the detainee's particular vulnerability." Id. (citing Colburn I, 838 F.2d at 669).

We will assume, arguendo, that Plaintiff has satisfied the first prong by showing a

particular vulnerability to suicide based on his claims that he clearly and repeatedly expressed his intent to commit suicide.[2]  For a plaintiff to establish the second prong of the standard for prison suicide cases, which asks whether the defendants knew or should have known of the detainee's particular vulnerability to suicide, "it is not necessary that the [defendants] have a subjective appreciation of the detainee's particular vulnerability.'"  Id. at 1024-25.  That said, there must be something "more culpable on the part of the officials than a negligent failure to recognize the high risk of suicide."  Id. at 1025.

While Plaintiff allegedly addressed several emergency medical requests to Phillips and Pierce indicating that he was having suicidal thoughts and that there was a possibility that he would commit suicide, Plaintiff has made no allegations from which we can infer that either Phillips or Pierce actually received these requests or had any knowledge of Plaintiff's suicide threats.  Indeed, Plaintiff filed general inmate grievance forms requesting medical attention and various qualified members of the GWHCF staff other than Phillips and Pierce responded to these requests.  The Complaint mentions only one meeting that Plaintiff had with Dr. Phillips, and it does not allege that Plaintiff said anything to Phillips at that meeting about wanting to commit

---

[2]It is worth noting, however, that we have serious doubts as to whether Plaintiff has alleged sufficient facts to support a claim that he had a particular vulnerability to suicide.  In order to establish a "particular vulnerability to suicide," a plaintiff must show there is "'a strong likelihood, rather than a mere possibility, that self-inflicted harm will occur.'"  Colburn II, 946 F.2d at 1024 (quoting Torraco v. Maloney, 923 F.2d 231, 236 (1st Cir. 1991)).  For there to be a "strong likelihood" of harm, it must be "'so obvious that a lay person would easily recognize the necessity for' preventative action."  Id. at 1025 (citing Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987)).

In this case, though Plaintiff alleges that he had been complaining of suicidal thoughts for months via inmate grievance forms, he has alleged no facts suggesting that he ever actually attempted to commit suicide or engaged in any other self-destructive behavior, nor has he alleged that he suffers from or has ever been diagnosed with any mental illness.  Under these circumstances, we are doubtful that Plaintiff has alleged enough to suggest that there was more than a "mere possibility" that self inflicted harm was likely to occur.  Nevertheless, we need not decide this issue in order to resolve the pending motion and, thus, we do not.

suicide or having threatened suicide previously.   The Complaint alleges only that he "disclose[d]" his eczema and asthma and that Dr. Phillips did not "seek [Plaintiff's] mental health of suicide." (Compl. at 15.)  Furthermore, Plaintiff has not alleged either that he ever met with Pierce or that Pierce knew of Plaintiff's medical requests or suicide threats.   Thus, the allegations in the Complaint do not plausibly allege that Pierce knew anything of Plaintiff's suicidal thoughts, or that Phillips, who met with Plaintiff on only one occasion and merely failed to inquire after Plaintiff's mental health, had a mental state "more culpable" than a "negligent failure to recognize the high risk of suicide."   Colburn II, 946 F.2d at 1025.   We therefore conclude that Plaintiff has failed to allege facts that, if true, would support a claim that Phillips and Pierce were deliberately indifferent to Plaintiff's mental health.

## IV.   CONCLUSION

For the foregoing reasons, we grant the Motion to Dismiss and dismiss the claims against Phillips and Pierce in the Third Amended Complaint with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).[3]  An appropriate Order follows.

BY THE COURT:

/s/ John R. Padova, J.

_____

John R. Padova, J.

---

[3]When granting a motion to dismiss in a civil rights case with a pro se plaintiff, "a District Court must grant the plaintiff leave to amend 'unless an amendment would be inequitable or futile.'" Zanders v. Ferko, 389 F. App'x 88, 89 (3d Cir. 2010) (quoting Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004)).  We find that further amendment of Plaintiff's claims against Phillips and Pierce would be inequitable as he has already been granted leave to amend those claims three times, and he has nevertheless been unable to state a cognizable claim against either of these two Defendants. Moreover, we explicitly warned Plaintiff in our October 11, 2011 opinion dismissing his Second Amended Complaint that we would "not hesitate to dismiss any medical care claims in Plaintiff's Third Amended Complaint without further leave to amend should his Third Amended Complaint again fall short of [the] basic pleading requirements."  Arnold v. Green, Civ. A. No. 10-5090, 2011 WL 4807918, at *5 n.9 (E.D. Pa. Oct. 11, 2011).